UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM R.,<br><br>                Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | CASE NO. C19-5609 BHS<br><br>ORDER REVERSING AND REMANDING DENIAL OF BENEFITS |

## I.     BASIC DATA

Type of Benefits Sought:

    ( ) Disability Insurance

    (X) Supplemental Security Income

Plaintiff's:

    Sex: Male

    Age: 35 at the time of alleged disability onset.

Principal Disabilities Alleged by Plaintiff: Back injury, depression, anxiety, asthma, diabetes, allergies, Asperger's, degenerative disc disease, dysfunctional urinary incontinence, agoraphobia, insomnia. Admin. Record ("AR") at 170–71.

Disability Allegedly Began: June 3, 2016

Principal Previous Work Experience: None

Education Level Achieved by Plaintiff: Associate degree.

ORDER - 1

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before Administrative Law Judge ("ALJ") Rebecca Jones:

Date of Hearing: April 12, 2018

Date of Decision: September 12, 2018

Appears in Record at: AR at 25–37

Summary of Decision:

The claimant has not engaged in substantial gainful activity since June 3, 2016, the application date. *See* 20 C.F.R. §§ 416.971–76.

The claimant has the following severe impairments: Major depressive disorder, generalized anxiety disorder, avoidant personality disorder, and obesity. *See* 20 C.F.R. § 416.920(c).

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with exceptions. He cannot climb ladders, ropes, or scaffolds. He can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. He cannot have exposure to fumes, odors, dusts, gases, vibration, or hazards. He can have occasional superficial interaction with the public and coworkers. He can perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements and involving only simple work-related decisions with few, if any, workplace changes.

The claimant has no past relevant work. *See* 20 C.F.R. § 416.965.

The claimant was a younger individual (age 18–49) on the date the application was filed. *See* 20 C.F.R. § 416.963.

The claimant has at least a high school education and is able to communicate in English. *See* 20 C.F.R. § 416.964.

> Transferability of job skills is not an issue because the claimant does not have past relevant work. *See* 20 C.F.R. § 416.968.
>
> Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. *See* 20 C.F.R. §§ 416.969, 416.969(a).

Before Appeals Council:

    Date of Decision: June 15, 2019

    Appears in Record at: AR at 1–4

    Summary of Decision: Denied review.

### III.     PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff    (X) Commissioner

### IV.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the Court is required to examine the record as a whole, it may neither reweigh

the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V. EVALUATING DISABILITY

Plaintiff bears the burden of proving he is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. § 1382c(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

## VI. ISSUES ON APPEAL

1. Whether the ALJ erred in discounting Plaintiff's subjective symptom

testimony.

2. Whether the ALJ erred in evaluating the opinions of Alexander Patterson, Psy.D., Terilee Wingate, Ph.D., and Kathleen Pruitt, MSW, LMHC.

3. Whether the ALJ erred in discounting the lay witness statements from Plaintiff's mother.

4. Whether the ALJ erred in assessing Plaintiff's RFC.

## VII. DISCUSSION

### A. The ALJ Harmfully Erred in Discounting Plaintiff's Symptom Testimony

Plaintiff contends the ALJ erred in discounting Plaintiff's subjective symptom testimony. Pl. Op. Br. (Dkt. # 9) at 12–15. Plaintiff focuses his argument on his mental symptom testimony, so the Court will do the same. *See id.*

Plaintiff testified that he has difficulty interacting with others. AR at 117–18, 312, 317. He testified that at times he struggles to express himself. *Id.* at 118, 317. His anxiety and depression make it difficult to be motivated in performing tasks. *Id.* at 126–27, 312, 340. He has trouble concentrating, and how long he can concentrate varies. *See id.* at 129–30, 340, 345, 347.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). At this stage, the claimant need only

show that the impairment could have caused some degree of the symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged. *Id.* The ALJ found that Plaintiff met this step because his medically determinable impairments could reasonably be expected to cause the symptoms he alleged. AR at 32.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ discounted Plaintiff's mental symptom testimony for two reasons. *See* AR at 32–33. The ALJ reasoned that Plaintiff's testimony was inconsistent with (1) the medical evidence and (2) Plaintiff's daily activities. *See id.* Neither reason withstands scrutiny.

**1. The ALJ Erred in Discounting Plaintiff's Mental Symptom Testimony as Inconsistent with the Medical Evidence**

The ALJ first discounted Plaintiff's mental symptom testimony because it was inconsistent with the medical evidence. *See id.* at 32–33. The ALJ found that Plaintiff's

symptoms were controlled with medication and treatment, they were stable, and the record did not show significant abnormalities. *Id.* at 33.

An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the Plaintiff's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support her conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

The ALJ's determination that Plaintiff's symptoms were "adequately controlled with medication and therapy," and were stable fails because it does not contradict Plaintiff's testimony. *See id.* at 33. Symptoms can be controlled or stable, and yet still be disabling. *See Garrison*, 759 F.3d at 1017 n.23 (quoting *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) ("'There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . .'"). The record supports that Plaintiff's symptoms were stable, and that medication helped, but the record does not demonstrate that Plaintiff's symptoms were controlled to the point that he could do more than he alleged. *See, e.g.*, AR at 413–14, 419–24, 435–36. Furthermore, the ALJ did not explain how Plaintiff's allegedly controlled and stable symptoms contradicted his testimony that he had difficulty with social interaction and concentration. *See id.* at 33.

The ALJ also erred in finding that Plaintiff's testimony was inconsistent with the medical evidence because psychiatric examinations showed "few significant abnormalities." *Id.* at 33. Plaintiff has had suicidal ideations, discussed cutting himself to relieve emotional pain, and regularly showed severe anxiety and depression on testing. *See id.* at 554, 557, 579–80, 584–86, 629, 723–24, 749–52, 837–38, 923–24. Moreover, the normal findings the ALJ cited in support of her determination do not contradict Plaintiff's testimony. That Plaintiff was generally cooperative, had normal thought processes and content, and had normal insight does not contradict Plaintiff's testimony that he struggles with social interaction. *See id.* at 33. The ALJ thus erred in discounting Plaintiff's testimony as inconsistent with the overall medical evidence.

2. **The ALJ Erred in Discounting Plaintiff's Mental Symptom Testimony as Inconsistent with His Activities of Daily Living**

The ALJ found that Plaintiff's mental symptom testimony was inconsistent with his daily activities. *Id.* at 33. An ALJ may reject a plaintiff's symptom testimony based on his daily activities if they contradict his testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). The ALJ discounted Plaintiff's testimony because he admitted he could handle tasks such as managing his personal care, preparing simple meals, shopping for groceries, attending game nights with his brother, and playing video games. *See id.*

The ALJ erred in discounting Plaintiff's mental symptom testimony based on his ability to perform tasks such personal care, preparing simple meals, and shopping. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery

shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603). That Plaintiff can, for example, microwave his dinner does not contradict his testimony that he has difficulty interacting with others or maintaining concentration. *See* AR at 556, 580.

The ALJ cited to other activities, such as attending game nights with his brother and his brother's roommate, and playing video games. *See id.* at 33. But playing games with a sibling and his roommate does not show that a person could interact with strangers or coworkers. *Cf. Garrison*, 759 F.3d at 1016 (noting that ALJs must be cautious when discounting testimony as inconsistent with daily activities because activities performed in a safe environment such as one's home may not be easily transferable to the more demanding workplace environment). Similarly, playing video games does not show that a person can maintain concentration at work. Video games are designed to hold users' attention, and vary widely in terms of the level of engagement required. *See Layton v. Berryhill*, 685 F. App'x 580, 581 (9th Cir. 2017) (noting that hobbies including playing video games "require significantly less concentration, stamina, memory, and interpersonal skills than the jobs identified by the vocational expert"). Consequently, none of the activities the ALJ cited contradict Plaintiff's testimony or meet the threshold of transferable work skills. The ALJ thus erred in discounting Plaintiff's mental symptom testimony as contradicted by his daily activities.

### 3. The ALJ's Errors in Discounting Plaintiff's Testimony Were Harmful

The ALJ's errors in discounting Plaintiff's symptom testimony must be considered harmful because they deprived the ultimate disability determination of substantial evidentiary support. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Plaintiff testified to symptoms that are not clearly accounted for in the RFC or hypotheticals posed to the vocational expert, such as difficulty expressing himself, maintaining motivation, and maintaining concentration. *Compare* AR at 118, 126–27, 129–30, *with* AR at 31, 137–44. The disability determination was therefore not supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (holding that the RFC and step five finding were not supported by substantial evidence where the RFC and hypotheticals to vocational expert failed to include all of the claimant's impairments). The ALJ's errors were, in turn, harmful. *See Molina*, 674 F.3d at 1115.

## B. The ALJ Harmfully Erred in Evaluating the Medical Evidence

Plaintiff contends the ALJ erred in evaluating the medical opinions of examining psychologists Dr. Patterson and Dr. Wingate, and treating therapist Ms. Pruitt. Pl. Op. Br. at 3–10. The Court addresses each in turn.

### 1. The ALJ Erred in Rejecting Dr. Patterson's Opinions

Dr. Patterson examined Plaintiff on August 30, 2016. AR at 554–59. Dr. Patterson conducted a clinical interview and mental status examination. *See id.* Dr. Patterson opined that Plaintiff would have difficulty interacting with coworkers and the

public, completing a normal work day and week without interruption, and dealing with the usual stress encountered in the workplace. *Id.* at 558–59.

The ALJ gave Dr. Patterson's opinions partial weight. *Id.* at 34. The ALJ accepted that Plaintiff would have difficulty interacting with coworkers and the public, and in dealing with workplace stress, but rejected Dr. Patterson's opinion that Plaintiff would have difficulty completing a normal work day and week without interruption. *Id.* The ALJ reasoned that this last opinion was "not fully supported by the longitudinal treatment history and appears to be based primarily on [Plaintiff's] reported limitations, which are also not wholly consistent with the longitudinal medical evidence." *Id.*

An ALJ may only reject the opinions of an examining doctor when contradicted if the ALJ provides "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1043). The ALJ's analysis did not meet this standard.

The ALJ erred in discounting Dr. Patterson's last opinion as not fully supported by the longitudinal treatment history. As explained above with respect to Plaintiff's symptom testimony, the ALJ erred in evaluating the medical evidence. *See supra* Part VII.A.1. The ALJ gave no additional detail as to the medical evidence, and therefore erred in discounting Dr. Patterson's opinion based on the medical evidence.

The ALJ further erred in discounting Dr. Patterson's opinion as being based primarily on Plaintiff's self-reports. First, the ALJ erred in discounting Plaintiff's testimony, and therefore could not reasonably discount Dr. Patterson's opinion for being based on Plaintiff's statements. *See supra* Part VII.A. Second, substantial evidence does

not support the ALJ's determination that Dr. Patterson primarily relied on Plaintiff's self-reports. An ALJ generally may not reject an opinion from a psychiatrist or psychologist for being too heavily based on the plaintiff's self-reports when the doctor performs a clinical interview or mental status evaluation because those are objective measures that can separately support the doctor's opinion. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Dr. Patterson conducted a clinical interview and mental status evaluation. *See* AR at 554–58. The ALJ therefore erred in discounting Dr. Patterson's opinion that Plaintiff would have difficulty completing a normal work day and week without interruption.

**2.  The ALJ Erred in Rejecting Dr. Wingate's Opinions**

Dr. Wingate examined Plaintiff on February 9, 2017.[1] *See* AR at 579–86. Dr. Wingate opined that Plaintiff had mild to moderate limitations in his ability to perform most basic work activities. *See id.* at 581. Dr. Wingate opined that Plaintiff had marked limitations in his ability to maintain attendance, follow a schedule, and complete a normal work day or week without interruption. *Id.*

The ALJ gave Dr. Wingate's opinions partial weight. *Id.* at 34–35. The ALJ reasoned that Dr. Wingate's "marked findings are not entirely consistent with the record as a whole." *Id.* at 35.

---

[1] Dr. Wingate had previously examined Plaintiff in May 2014 and March 2015. *See* AR at 373–88. Plaintiff concedes that Dr. Wingate's opinions following those examinations are largely consistent with her opinions as of the February 2017 examination, and does not separately challenge the ALJ's evaluation of them. *See* Pl. Op. Br. at 7.

The ALJ needed to give specific and legitimate reasons to discount Dr. Wingate's opinions, and again failed to meet that standard. *See Lester*, 81 F.3d at 830–31 (citing *Andrews*, 53 F.3d at 1043). As with her evaluation of Dr. Patterson's opinions, the ALJ erred in evaluating the medical evidence, and thus erred in discounting Dr. Wingate's opinions based on that evidence. *See supra* Part VII.A.1. Moreover, the ALJ gave only one example of her reasoning: "Dr. Wingate's examination showed abnormal mood and affect, but was otherwise within normal limits." AR at 35. That finding is not inconsistent with Dr. Wingate's opinions that Plaintiff would have difficulty maintaining attendance and completing a normal work day without interruption. The ALJ therefore erred in partially rejecting Dr. Wingate's opinions.

### 3. The ALJ Erred in Rejecting Ms. Pruitt's Opinions

Ms. Pruitt was Plaintiff's treating therapist. *See* AR at 13–21, 43–69, 389–404, 413–16, 511–23, 562, 905–35. She provided a two letters and completed questionnaires regarding Plaintiff's limitations. *See id.* at 562, 930–35. In November 2016, Ms. Pruitt opined that Plaintiff was unable to maintain a job due to anxiety and obsessive thoughts. *See id.* at 562. She opined that his anxiety renders him "nearly paralyzed in making life decisions." *Id.* at 562. Ms. Pruitt opined that Plaintiff had moderate to extreme limitations in his ability to interact with others. *Id.* at 933–34. Ms. Pruitt opined that Plaintiff had extreme limitations in his ability to maintain an ordinary routine and regular attendance at work, work a full day without extra rest periods, adapt to changes, and manage his symptoms. *Id.* at 934.

Ms. Pruitt gave similar opinions in February 2018. *See id.* at 930–32. She added that Plaintiff had limitations in his ability to maintan concentration, persistence, or pace. *Id.* at 931. Ms. Pruitt opined that if Plaintiff were to try to work, he would need accommodations including home-based work with little social contact, and flexible hours for times when his anxiety and depression impact his ability to concentrate. *Id.* at 932.

The ALJ gave Ms. Pruitt's opinions little weight. *Id.* at 35. The ALJ reasoned that Ms. Pruitt's "treatment notes show few objective findings and she appears to have relied primarily on [Plaintiff's] reported limitations, which as discussed above, are not entirely consistent with the record." *Id.*

Ms. Pruitt is considered an "other source" under the Commissioner's regulations. *See* 20 C.F.R. § 416.902(i); *see also Garrison*, 759 F.3d at 1013–14. "The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). The ALJ's reasoning did not meet this standard.

The ALJ's reasoning fails because she did not take into account the unique nature of mental health treatment. Ms. Pruitt's treatment notes document her observations of Plaintiff and his reports of symptoms. *See, e.g.*, AR at 512, 516, 906, 912, 917, 922–24. These may not appear to be "objective" findings, but such is the nature of mental health treatment; "'unlike a broken arm, a mind cannot be x-rayed.'" *Buck*, 869 F.3d at 1049 (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). Mental health evaluations must depend at least in part on the patient's self-report. *See id.* And, as

discussed above, the ALJ erred in discounting Plaintiff's symptom testimony. *See supra* Part VII.A. The ALJ's determination that Ms. Pruitt's treatment notes contained few objective findings, and that she relied primarily on Plaintiff's statements therefore do not justify rejecting Ms. Pruitt's opinions. The ALJ thus erred.

### 4. The ALJ's Errors in Evaluating the Medical Evidence Were Harmful

The ALJ's errors in evaluating the medical evidence must be considered harmful. Each of the opinions the ALJ rejected could be read to contain greater limitations than those the ALJ included in the RFC, or in the hypotheticals posed to the vocational expert. *Compare* AR at 559, 562, 581, 931, 934, *with* AR at 31, 137–44. The ALJ's errors consequently deprived the disability determination of substantial evidentiary support. *See Lingenfelter*, 504 F.3d at 1040–41. Those errors were therefore harmful. *See Molina*, 674 F.3d at 1115.

## C. The ALJ Harmfully Erred in Discounting Plaintiff's Mother's Statements

Plaintiff contends the ALJ erred in discounting Plaintiff's mother's lay witness statements. Pl. Op. Br. at 10–11. Plaintiff's mother completed a third-party adult function report describing her observations of Plaintiff. *See* AR at 331–38. Plaintiff's mother described his difficulty interacting with others. *See id.* at 331. She described how Plaintiff isolates himself. *Id.* at 332, 334–36. Plaintiff's mother described how Plaintiff has difficulty handling stress and adapting to changes. *Id.* at 337.

The ALJ gave Plaintiff's mother's statements "some weight." *Id.* at 35. The ALJ explained that "[a]lthough the [Plaintiff's mother's] statements are generally consistent with [Plaintiff's] allegations, they are inconsistent with the medical evidence of record,

which does not support [Plaintiff's] allegations, and inconsistent with [Plaintiff's reported level of activity throughout the record." *Id.*

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. *Molina*, 674 F.3d at 1111 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

The ALJ's reasons for discounting Plaintiff's mother's statements are the same reasons the ALJ gave for discounting Plaintiff's testimony. *See* AR at 32–33. As such, the ALJ's analysis fails here just as it failed with respect to Plaintiff's testimony. *See supra* Part VII.A. The ALJ's errors also must be deemed harmful because the Court cannot confidently conclude that the ALJ would have reached the same nondisability determination had the ALJ not erred. *See Stout*, 454 F.3d at 1056.

**D.     The ALJ Harmfully Erred in Assessing Plaintiff's RFC**

Plaintiff contends the ALJ erred in assessing Plaintiff's RFC. Pl. Op. Br. at 16. Plaintiff first argues that the ALJ failed to account for his physical impairments, and that the error began at step two. *See id.* Plaintiff does not present any specific argument as to this issue, however, and has thus failed to show harmful error. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).

Plaintiff next argues the ALJ failed to address all of Plaintiff's mental impairments in the RFC. *See* Pl. Op. Br. at 16. Because the Court has found that the ALJ erred in evaluating Plaintiff's symptom testimony, the medical evidence, and Plaintiff's mother's testimony, Plaintiff's argument succeeds. *See Lingenfelter*, 504 F.3d at 1040–41. The ALJ harmfully erred in assessing Plaintiff's RFC.

**E.     Scope of Remand**

Plaintiff asks the Court to remand this matter for an award of benefits. Pl. Op. Br. at 17–18. Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within

the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The appropriate remedy here is to remand for further administrative proceedings. The doctors' opinions, Plaintiff's symptom testimony, and Plaintiff's mother's testimony cannot be easily translated into an RFC, nor is the Court able to do that translation. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Further proceedings are necessary to resolve this issue.

On remand, the ALJ shall reevaluate Plaintiff's mental symptom testimony, the opinions of Dr. Patterson, Dr. Wingate, and Ms. Pruitt, and Plaintiff's mother's testimony. The ALJ shall reassess Plaintiff's RFC and the step five determination. The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion

## VIII. ORDER

Therefore, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 28th day of January, 2020.

BENJAMIN H. SETTLE
United States District Judge